UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| THOMAS COVINGTON, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:21CV385 |
| | ) | |
| BETTY BROWN, et al., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This is a *pro se* civil rights action filed under 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") by Plaintiff Thomas Covington, Jr., an inmate in the custody of the North Carolina Department of Corrections, who alleges that he was denied the ability to pay Zakat (charity) and celebrate the Eid Al Fitr feast in accordance with his Muslim faith, and that his equal protection rights were violated when Defendants allowed a Christian group to host weekend retreats at the prison. This matter comes before the Court on cross Motions for Summary Judgment. As further set out below, the Court recommends that Defendants' Motion for Summary Judgment be granted, and that Plaintiff's Motion for Summary Judgment be denied.

I.   PLAINTIFF'S CLAIMS

*Pro se* Plaintiff Thomas Covington, Jr., a North Carolina state inmate incarcerated at Scotland Correctional Institute ("Scotland") filed this action on May 17, 2021 under 42 U.S.C. § 1983 alleging violations of the First and Fourteenth Amendments and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") against five current and former North

Carolina Department of Public Safety ("DPS") employees: Betty Brown, DPS Chaplaincy Director during the relevant times; Katy Poole, Warden at Scotland during the relevant times; Charlie Locklear, Program Director at Scotland; Sarah McLucas-Floyd, Programs Supervisor at Scotland; and Reginald Bowens,[1] Chaplain at Scotland.

Plaintiff brings three claims. First, Plaintiff alleges that Defendants Brown, Poole, Locklear, McLucas-Floyd, and Bowens failed to maintain a Zakat fund at Scotland, which placed a substantial burden on Plaintiff's sincerely held religious belief to pay Zakat and violated his rights under the First Amendment and RLUIPA. Second, Plaintiff alleges that Defendant Brown denied Plaintiff a celebratory Eid Feast in violation of his rights under the First Amendment and RLUIPA. Third and finally, Plaintiff alleges that Defendants Poole, Locklear, McLucas-Floyd, and Bowens failed "to treat Plaintiff fairly" compared to the Karios Christian Organization and violated Plaintiff's right to equal protection under the Fourteenth Amendment. (Compl. [Doc. #1] at 8-9.) Plaintiff sues each Defendant in their individual and official capacities and seeks nominal damages as well as $5000.00 in punitive damages from each Defendant. Plaintiff also seeks injunctive relief requiring Defendant Brown to change DPS policy "regarding the Islamic Zakat directive from [the] propositional may to the mandatory shall," thus requiring every DPS facility to institute a Zakat fund. (Compl. at 12.)[2]

---

[1] The Court notes that Plaintiff's complaint and the docket identify Defendant Reginald Bowens as "Reginal Bowen." (Compl. at 3, 6.) To avoid confusion, the Court clarifies here that its references to "Defendant Bowens" are references to the same individual identified by Plaintiff as "Reginal Bowen."

[2] Defendant Brown retired from her position as Director of Chaplaincy on March 1, 2022, (Brown Decl. ¶ 2 [Doc. #36-1]), and Defendant Poole retried from her position as Warden on June 1, 2021 (Poole Decl. ¶ 2 [Doc. #36-2]). The Parties have not moved to substitute these Defendants, but to the extent they are sued in their official capacities, the action proceeds here against their successors. Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party.").

Before the Court are the Parties' cross Motions for Summary Judgment. [Doc. #35, #38.] The Motions are briefed and ready for the Court's review.

II. SUMMARY JUDGMENT

A. Standard

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine issue of fact exists if the evidence presented could lead a reasonable fact-finder to return a verdict in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A court considering a motion for summary judgment must view all facts and draw all reasonable inferences from the evidence before it in a light most favorable to the non-moving party. Id. The proponent of summary judgment "bears the initial burden of pointing to the absence of a genuine issue of material fact." Temkin v. Frederick Cnty. Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). If the movant carries this burden, then the burden "shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." Id. at 718-19 (citing Anderson, 477 U.S. at 247-48). A mere scintilla of evidence supporting the non-moving party's case is insufficient to defeat a motion for summary judgment. See, e.g., Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994); see also Anderson, 477 U.S. at 248 (noting that a non-moving party may not rest upon mere allegations or denials). Thus, "plaintiffs need to present more than their own

3

unsupported speculation and conclusory allegations to survive" a motion for summary judgment. Robinson v. Priority Auto. Huntersville, Inc., 70 F.4th 766, 780 (4th Cir. 2023).

B. Facts Related to Summary Judgment

Plaintiff is an inmate at Scotland where he has been incarcerated since August 2014. (Covington Decl. ¶¶ 2-3 [Doc. #39-1].)[3] According to his Declaration, he is a devout Muslim who regularly studies the Quran, prays, and engages in religious activities in accordance with his faith. (Id. ¶¶ 5-9.) Plaintiff's filings note that Muslims have five basic beliefs: declaration of faith, prayer, Zakat (charity), fasting during the month of Ramadan, and, if possible, a pilgrimage to Mecca at least once in a lifetime. (Compl. at 33.)

i. Zakat

Zakat is "money collected for charity and propagation of the faith." (Compl. at 37.) Under DPS policy, "each facility may permit a local Zakat using the trust fund accounting system." (Compl. at 37 (emphasis added).)[4] During Defendant Poole's tenure as Warden at Scotland from 2014 to 2021, Scotland did not have a Zakat fund.[5] (Poole Decl. ¶ 3.)

---

[3] Plaintiff filed two declarations, one attached to his Motion for Summary Judgment [Doc. #39-1], and one attached to Plaintiff's Opposition to Defendants' Motion for Summary Judgment [Doc. #40-1]. To avoid confusion, where the Court cites to Plaintiff's declarations, it will also provide the Electronic Case Filing ("ECF") document number associated with the cited declaration.

[4] Defendants provided a copy of what Defendants identify as "NC DPS's Religious Practices and Procedure Manual." [Doc. #36-2.] The copy provided by Defendants appears to be an excerpt of the full manual and includes only the section on DPS's policies regarding Islam. The copy is undated. Plaintiff, as an attachment to his complaint, provided a similar document titled "North Carolina Department of Correction Division of Prisons Religious Practices Reference Manual." (Compl. at 32-39.) Plaintiff's version is dated June 19, 2011. The documents provided by the Parties appear to be different versions of NC DPS's policy manual governing religious practices in the state prisons. Because Defendants did not provide the Court with a version number or publication date, the Court cannot determine which manual governed during the relevant time period. However, the Court has not identified any material differences, and in accordance with its obligation to view the facts in the light most favorable to Plaintiff, the Court will cite to Plaintiff's version. (See Compl. at 32-39.)

[5] There are some factual inconsistencies about when the Zakat fund at Scotland was discontinued. Plaintiff alleges that the Zakat was suspended in 2014 when Defendant Poole was appointed to serve as Scotland's

4

Defendants contend that although Scotland does not operate a Zakat fund, Muslim inmates at Scotland are not prohibited from practicing Zakat because they are permitted to make donations from their trust accounts to outside mosques or charities. (Brown Decl. ¶ 3 [Doc. #36-1]; Poole Decl. ¶ 3 [Doc. #36-3]; Bowens Decl. ¶ 3 [Doc. #36-4].) In response, Plaintiff contends that Defendants never informed him that he could donate to a local mosque or charity. (Covington Decl. ¶ 3 [Doc. #40-1].)

ii. Eid Feast

In addition to paying Zakat, Plaintiff observes the holy month of Ramadan. (Covington Decl. ¶ 8 [Doc. #39-1].) Ramadan concludes with Eid Al Fitr, a prayer and feast that marks the end of the month of fasting. (Compl. at 38.) DPS policy provided for the celebration of the Eid Feast by holding a

> [s]pecial meal . . . on any one of the first three days after the last fasting day. The meal will consist of the regular menu enhanced by fruit punch and other special items. If the menu consists of pork and pork derivatives, non-pork substitute shall be served as part of the special meal. Special food items may also be prepared if a local Islamic community is available to assist. Since this is a festive, celebratory occasion, if a local Islamic Community is not available to assist, then approved family members may be allowed to prepare and transport special food items to the facility.

---

warden. (Compl. at 9.) Defendant Poole agrees that Scotland did not have a Zakat fund between 2014 and 2021 while she was warden. (Poole Decl. ¶ 3.) However, after Plaintiff filed a grievance with Defendant McLucas-Floyd seeking to use Zakat funds to purchase items for the Eid Feast in 2019, Defendant McLucas-Floyd responded that Scotland's Zakat fund was suspended in 2018 due to three years of inactivity. (Compl. at 9.) Regardless of when the Zakat fund was suspended, the Parties agree that Scotland did not have a Zakat fund in 2019 when Plaintiff requested to use Zakat funds to purchase items for the Eid Feast. (See Poole Decl. ¶ 3; Compl. at 9.) Because the Court understands Plaintiff's claim to rest on Scotland's lack of a Zakat fund in 2019, and because the Parties agree that Scotland did not have an active Zakat fund in May 2019, any factual dispute about when the Zakat at Scotland was suspended is not material to this Court's determination of Plaintiff's claims on summary judgment.

In addition, although the Parties agree that Scotland did not have an active Zakat fund in 2019, Plaintiff was apparently permitted—mistakenly—to donate to the fund in Spring 2019. (Compl. at 24, 26.) After donating, Plaintiff was notified that Scotland's Zakat fund was "permanently closed," and his donation was reimbursed. (Compl. at 26.)

5

(Compl. at 38.) According to a DPS Ramadan Observance Memorandum circulated to DPS wardens and facility chaplains in April 2019,

> Volunteers from the Islamic Muslim community should be allowed to attend the observance meal. Approved family members may also be allowed to attend the observance meal if approved by the Facility Head.

> The observance meal will be provided by:
> Food service staff will serve the regular menu with the exception of pork and pork derivatives and the menu will be enhanced with cake & fruit punch.

> OR

> Volunteers from the Islamic Muslim community will be approved to bring in food purchased from a food vendor.

(Compl. at 29.) Zakat funds could also be used "to purchase food items for the observance meal." (Compl. at 31.)

In 2019, Ramadan began on May 5 and ended on June 4. (Compl. at 27.) That year, DPS correctional facilities could choose to hold the Eid Feast on June 5, 6, or 7. (Compl. at 29.) Scotland chose to accommodate the Eid Feast by serving the regular menu with cake and punch. (Bowens Decl. ¶ 3.) On May 17, 2019, prior to the Eid Feast, faith helper and fellow Scotland inmate Martquell Johnson sent a request to Defendant Bowens requesting to use Zakat funds to purchase items for the Eid Feast. (Compl. at 8, 19, 45.) Defendant Bowens responded to Mr. Johnson on May 20 stating that "Zakat funds are not for Feast according to policy. It is for charity." (Compl. at 8, 19, 46.)

The Eid Feast at Scotland was subsequently celebrated in the "prison chow hall" with punch and cake, and apparently without additional items purchased with Zakat funds or provided by outside volunteers from the Muslim community. (See Brown Decl. ¶ 3; Compl.

6

at 9.) According to the Complaint, Muslim inmates were served "a single tray" of food and given "fifteen minutes to celebrate." (Compl. at 9.)

On June 18, 2019, after the Eid Feast and following Defendant Bowens's refusal to permit Zakat funds to be used for the feast, Plaintiff filed a grievance with Defendant McLucas-Floyd, alleging that Defendant Bowens ignored DPS policies and procedures regarding the permitted use of the Zakat funds and intentionally discriminated against Muslim inmates by refusing to permit the Islamic community to purchase outside items for the Feast. (Compl. at 8, 20-23.) Defendant McLucas-Floyd responded to Plaintiff on July 10, 2019, noting that DPS policy had two options for serving the Eid Feast, and the option selected "[f]or the last four years" was to have "Food Service staff serve the regular menu with the exception of pork and pork derivatives and … enhanced with cake and punch." (Compl. at 24.) When this option is selected to serve the Eid Feast, she noted, policy "does not allow the use of the [Z]akat fund." (Compl. at 24.) In the same grievance response, Defendant McLucas-Floyd noted that the "Zakat Fund was suspended in 2018 due to inactivity for over 3 years." (Compl. at 24.)

Plaintiff appealed Defendant McLucas-Floyd's grievance decision to Kimberly Grande, Scotland's Inmate Grievance Examiner. (Compl. at 26.) On August 13, 2019, Ms. Grande dismissed Plaintiff's claim after finding "no violation of applicable Prisons policy" and no "evidence of staff misconduct, retaliation, or discrimination." (Compl. at 26.) She also noted that "[Z]akat funds are no longer used due to lack of participation" and that "the account is permanently closed." (Compl. at 26.)

On January 20, 2020, Plaintiff wrote to Defendant Brown, then Director of Chaplaincy Services at DPS, regarding Defendant Poole's decision to terminate the Zakat account and alleging that Defendant Poole "intentionally sought to impair [his] free exercise rights by refusing to provide [him] an opportunity to pay Zakat." (Compl. at 48.) The Parties have not indicated whether Defendant Brown received the letter, but Defendant Brown declared she "did not personally know Offender Covington" or have "personal dealings with him." (Brown Decl. ¶ 4). Plaintiff alleged that as of the filing of his complaint on May 17, 2021, Defendant Brown had not responded to his letter. (Compl. at 10.)

      iii.    Kairos Prison Ministry

Kairos Prison Ministry ("Kairos") is a Christian organization that provides weekend retreats in the prison, with food and programs. (Bowens Decl. ¶ 3.) Kairos operates in prisons across North Carolina, including at Scotland. (Id.) Prisoners of all faiths at Scotland are invited to attend Kairos's weekend retreats (id.), which include "food, music, and other effects." (Compl. at 8.) Defendants note that no Muslim group has offered to provide similar weekend retreats at Scotland (Bowens Decl. ¶ 3), and "no similar Muslim based group has been denied the opportunity to provide similar fellowship" (Poole Decl. ¶ 3).

## III.   DISCUSSION

### A. Eleventh Amendment Immunity

Defendants, pointing to the Supreme Court's decision in Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989), argue that Plaintiff's official capacity claims against all Defendants under § 1983 are barred by Eleventh Amendment immunity because Defendants

are not "persons" who can be sued under § 1983 and are instead an extension of the State of North Carolina, which has not waived immunity. (Defs.' Br. [Doc. #36] at 15.)

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "It is true that suit instituted under § 1983 against state officials in their official capacity is barred by the Eleventh Amendment when [the plaintiff] seeks money from the state treasury in the form of damages." Edwards v. Rubenstein, No. 2:14cv17, 2016 WL 519641, at *6 (N.D.W. Va. Jan. 20, 2016) (citing Will, 491 U.S. 58), report and recommendation adopted, 2016 WL 538479 (N.D.W. Va. Feb. 9, 2016). But Will also makes clear that "when sued for injunctive relief," actions against "a state official in his or her official capacity" may proceed because "'official-capacity actions for prospective relief are not treated as actions against the state.'" 491 U.S. at 71 n.10 (quoting Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985)); see Ex Parte Young, 209 U.S. 123, 160 (1908).

Here, Plaintiff advances claims against all Defendants in their individual and official capacities seeking nominal and punitive damages. Plaintiff's claims against Defendants in their official capacities operate as suits against the state and, to the extent Plaintiff seeks monetary damages, Plaintiff's official capacity claims are barred by the Eleventh Amendment. However, Plaintiff also advances an official capacity claim against Defendant Brown seeking injunctive relief in the form of a court order directing DPS to change its Zakat policy to require state correctional institutions to maintain a Zakat fund. (Compl. at 12.) Unlike Plaintiff's official capacity claims seeking monetary damages, Plaintiff's claim against Defendant Brown for

9

injunctive relief is not barred by Eleventh Amendment immunity. Moreover, Plaintiff's individual capacity claims for monetary damages against all Defendants are similarly unaffected by Eleventh Amendment immunity, and the merits of these claims are discussed below.[6]

B. <u>RLUIPA and Free Exercise Claims</u>

    i. <u>RLUIPA Claims</u>

In relevant part, RLUIPA provides that

> [n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution … if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person--
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).[7] RLUIPA claims proceed in two stages. First, "the plaintiff must show that the prison's policies imposed a substantial burden on his exercise of sincerely held

---

[6] Although Defendants do not address whether the Eleventh Amendment bars Plaintiff's official capacity claims for money damages under RLUPIA, the Court notes that these claims are similarly barred by Eleventh Amendment immunity. <u>See</u> <u>Madison v. Virginia</u>, 474 F.3d 118, 131 (4th Cir. 2006) (holding that the Eleventh Amendment bars RLUIPA claims for official capacity money damages). Plaintiff's individual capacity claims for money damages under RLUIPA are likewise barred. <u>Rendleman v. Rouse</u>, 569 F.3d 182, 184 & n.2 (4th Cir. 2009) ("[W]hen invoked as a spending clause statute, RLUIPA does not authorize a claim for money damages against an official sued in her individual capacity. . . . RLUIPA does not authorize claims for official or individual capacity damages."); <u>Sossoman v. Texas</u>, 563 U.S. 277 (2011). Thus, Plaintiff's only potential remedies under RLUIPA are equitable. <u>See also</u> <u>Abdul-Mateen v. Phipps</u>, No. 601430, 2012 WL 601430, at *3 (W.D. Va. Feb. 23, 2012) ("The Eleventh Amendment does not bar [plaintiff's] claims under RLUIPA for injunctive relief against [defendant] in her official capacity. Nor does it bar plaintiff's claims under the First Amendment for monetary relief against defendants in their individual capacities or [plaintiff's] claims for injunctive relief in their official capacities.").

[7] RLUIPA defines "government" as "(i) a State, county, municipality, or other governmental entity created under the authority of a State; (ii) any branch, department, agency, instrumentality, or any official of an entity listed in clause (i); and (iii) any other person acting under color of state law." 42 U.S.C. § 2000cc-5(4). Here, Defendants are current and former DPS employees, and are therefore officials of the state meeting RLUIPA's definition of "government."

religious beliefs." <u>Wright v. Lassiter,</u> 921 F.3d 413, 418 (4th Cir. 2019) (citation omitted); 42 U.S.C. § 2000cc-1(a). "'[A] substantial burden is one that puts substantial pressure on an adherent to modify his behavior and to violate his beliefs or one that forces a person to choose between following the precepts of her religion and forfeiting governmental benefits, on the one hand, and abandoning the precepts of her religion on the other hand.'" <u>Greenhill v. Clarke,</u> 944 F.3d 243, 250 (4th Cir. 2019) (quoting <u>Lovelace v. Lee,</u> 472 F.3d 174, 187 (4th Cir. 2006)).

Once the inmate makes this showing, the court proceeds to the second stage of the inquiry, which "ask[s] whether the prison's policies are justified despite the burden they impose." <u>Wright,</u> 921 F.3d at 418; <u>Greenhill,</u> 944 F.3d at 250. This is a strict scrutiny standard, <u>Wright,</u> 921 F.3d at 418, which requires the government to show that the challenged policy is "(1) in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. §§ 2000cc-1(a).

a. <u>Zakat Fund</u>

Plaintiff alleges that Defendants' discontinuation of Scotland's Zakat fund violated his rights under RLUIPA. In their Motion for Summary Judgment, Defendants argue that Scotland's decision not to provide a Zakat fund did not substantially burden Plaintiff's religious beliefs because Plaintiff is permitted to donate to charities outside the prison. (Defs.' Br. at 11.) In response, Plaintiff argues that he was not informed of this option, and that he would be unable to make a "special draw" from his prison trust account to an outside charity or mosque because DPS's special draw request form states that special draw requests will "not be approved if the person" to whom the inmate seeks to send the money is "not on [the

inmate's] approved visitation list." (Pl.'s Opp. at 3 [Doc.#40]; Covington Decl. ¶ 5 [Doc. #40-2].) However, that Plaintiff may be unable to send money to a *person* who has not been approved for visitation does not preclude Plaintiff from sending money to a mosque or charity, and therefore does show that Plaintiff is unable to pay Zakat to an outside entity.

Plaintiff also directs the Court to Scotland's Religious Service Department Request form. Plaintiff appears to argue that while he is permitted to purchase religious items from approved outside vendors, the Religious Service Department Request form does not have an option to pay Zakat to any of these vendors. (Pre-Approval Package [Doc. #40-3].) This is true. But the fact that the request form only includes options to purchase religious items, and not to donate to charity, does not mean that Plaintiff would be unable to pay Zakat to one of the approved outside Muslim vendors, or to another outside mosque or charity.

Ultimately, Plaintiff has not produced any evidence that he is unable to pay Zakat to an outside charity. Plaintiff does not even allege that he attempted to pay Zakat to an outside charity or mosque but was refused. On the present record, Plaintiff has not put forth sufficient evidence to establish that he was precluded from paying Zakat or that Scotland's discontinuation of the Zakat fund put any "substantial pressure" on Plaintiff to modify his behavior or beliefs. See Greenhill, 944 F.3d at 250. Without this evidence, Plaintiff has not shown that his exercise of his religious beliefs was substantially burdened.

Other federal district courts in North Carolina have reached the same conclusion in nearly identical cases. Carawan v. Mitchell, 3:16CV577, 2018 WL 1187560, at *1, *4 (W.D.N.C. Mar. 7, 2018), aff'd, 735 F. App'x 126 (4th Cir. 2018); King v. Hooks, No. 5:17CT3043, 2021 WL 1435294, at *10 (E.D.N.C. Mar. 29, 2021), aff'd, 2022 WL 355770 (4th

Cir. Feb. 7, 2022). In Carawan v. Mitchell, a North Carolina state inmate sued prison officials under § 1983 alleging violations of his rights under the First Amendment and RLUIPA because "the prison did not have a Zakat fund," and he was therefore "not permitted to practice Zakat (charity) in accordance with Islam." Carawan, 2018 WL 1187560, at *1. The district court disagreed. In finding that the prison's lack of a Zakat fund did not violate the plaintiff's constitutional rights, the district court found that

> Plaintiff simply assumes that the lack of a Zakat fund amounts to a constitutional violation, but he fails to identify how the lack of a Zakat fund caused him to modify his behavior or violate his beliefs because of the prison's suspension of the fund. Most importantly, he has not shown that the discontinuation of the Zakat fund placed a substantial burden on his right to practice the charity pillar of his religion. A substantial burden must be more than an inconvenience to an inmate's religious practice. Smith v. Allen, 502 F.3d 1225, 1278 (11th Cir. 2007). Further, government action—here, prison policy which simply places restrictions on religious exercise more difficult, but which does not pressure the adherent [to] violate his or her religious beliefs or abandon one of the precepts of his religion—is not a substantial burden. Living Water Church of God v. Charter Twp. Of Meridian, 258 F. App'x 729, 739 (6th Cir. 2007).

Carawan, 2018 WL 1187560, at *4. That determination was affirmed by the Court of Appeals for the Fourth Circuit on appeal. Carawan v. Mitchell, 735 F. App'x 126 (4th Cir. 2018).[8]

Similarly, in King v. Hooks, North Carolina state inmates sued several prison officials under § 1983 and RLUIPA alleging, among other things, that defendants' refusal to "establish

---

[8] The Court also notes that the potential burden on Plaintiff is even less here than in Carawan. In Carawan, the plaintiff argued that the lack of the prison Zakat fund was a substantial burden because he could not afford the $5 fee for a money order to send a donation outside the jail but could have donated $2 or less to a prison-operated Zakat fund had one existed. 2018 WL 1187560, at *5. The district court disagreed, concluding that the "lack of funds in [plaintiff's] prison trust account" did not create a constitutional violation. Id. Here, unlike the plaintiff in Carawan, Plaintiff had over $90,000 in his prison trust fund at the time he filed his complaint. (Compl. at 2.) Thus, Plaintiff's financial circumstances clearly create no barriers to donating to a mosque or charity outside the prison. See also Bone E v. Solomon, No. 1:17CV445, 2020 WL 6546056, at *3 (M.D.N.C. Nov. 6, 2020) ("No substantial burden occurs if the government action merely makes religious exercise more expensive or difficult." (citation and bracket omitted)).

a Zakat charitable giving account" violated their religious exercise. King, 2021 WL 1435294, at *10. Once again, the district court disagreed, explaining that the "[p]laintiffs [did] not offer evidence suggesting denial of the account itself substantially burdens their religious exercise" because they were "not prohibited from donating funds in their trust accounts to charity." Id. On appeal, the Fourth Circuit affirmed for the reasons given by the district court. King v. Hooks, No. 21-6561, 2022 WL 355770 (4th Cir. Feb. 7, 2022).

In sum, Plaintiff has not demonstrated that Scotland's lack of a Zakat fund substantially burdened the exercise of his religious beliefs, and Plaintiff has therefore failed to establish a violation under RLUIPA.

     b.  <u>Eid Feast</u>

Plaintiff next alleges that Scotland's celebration of the Eid Feast, which he contends was fifteen minutes long, took place in the "prison chow hall," and consisted of "a single tray" of food with punch and cake, violated his rights under RLUIPA. (Compl. at 9.) Defendants again argue that Plaintiff's rights were not substantially burdened by Scotland's celebration of the Eid Feast, and the Court agrees. Plaintiff has not produced evidence that Scotland's celebration of the Eid Feast substantially burdened Plaintiff's religious beliefs. Although Plaintiff clearly believes that the feast was not sufficiently festive, there is no evidence in the record that shows Plaintiff felt substantial pressure to modify his behavior or change his devotion to his religious principles as a result of how the feast was celebrated. See Gamble v. Kenworthy, No. 5:12CT3053, 2015 WL 631329, at *3-4 (E.D.N.C. Feb. 12, 2015) (holding that plaintiff's religious exercise was not burdened when he was served the "regular menu enhanced by fruit punch, desserts and other special items" to celebrate the Eid Feast), aff'd,

Case 1:21-cv-00385-WO-JEP   Document 42   Filed 01/31/25   Page 14 of 22

604 F. App'x 301 (4th Cir. 2015) (per curiam), <u>cert denied</u>, 577 U.S. 1011 (2015); <u>Grate v. Huffman</u>, No. 7:07CV449, 2007 WL 3275151, at *4-5 (W.D. Va. Nov. 5, 2007) (holding that plaintiff failed to sufficiently demonstrate that the extra piece of fruit he was served with his prison meal to observe the Eid Feast substantially burdened or offended his religious beliefs).[9]

Furthermore, under DPS policy, the Eid Feast could be observed by providing the "regular menu with the exception of pork and pork derivatives . . . enhanced with cake & fruit punch" or by "volunteers from the Islamic Muslim community" bringing in purchased food. (Compl. at 29.) In 2019, Scotland chose to accommodate the Eid Feast by serving the regular menu with cake and punch. (Bown Decl. ¶ 3.) To the extent that Plaintiff's claim rests on Defendants' decision to cater the meal in-house, rather than to permit outside food to be brought in, "[t]he denial of outside sources of food to contribute to [the Eid] feast does not constitute a substantial burden on [a] [p]laintiff's religious exercise." <u>Gamble</u>, 2015 WL 631329, at *4.

In sum, Plaintiff has failed to demonstrate that the Eid Feast provided at Scotland in 2019 substantially burdened the exercise of his religious beliefs to state a RLUIPA claim.

---

[9] Indeed, district courts in this circuit have regularly held that failing to hold an Eid feast altogether does not substantially burden a plaintiff's exercise of his religious beliefs. <u>Muhammad v. Wade</u>, No. 1:09CV939, 2011 WL 837125, at *7 (E.D. Va. Mar. 2, 2011) (finding that plaintiff failed to show that a prison facility's policy that did not permit an Eid-ul-Fitr feast did not substantially burden plaintiff's religious beliefs because plaintiff did not "claim that he felt substantial pressure to abandon or to change his devotion to [his religious] principles as a result of defendants' actions"); <u>DePoala v. Va. Dep't of Corrs.</u>, No. 7:12CV592, 2013 WL 6804744, at *3-4 (W.D. Va. Dec. 20, 2013) (finding that plaintiff failed to show how "missing one [Eid] feast meal rises to the level of a 'substantial burden'" because he did "not assert that his religious exercise was so encumbered that he was forced to modify or abandon his religious beliefs"). Here, Plaintiff does not dispute that Scotland held an Eid Feast in 2019 and instead simply disagrees with how it was held. Given the precedent concluding that a plaintiff's inability to celebrate the Eid Feast altogether does not create a substantial burden, Plaintiff's claim regarding the sufficiency of the feast clearly does not rise to the level of a substantial burden on the exercise of his religious beliefs.

Having concluded that Plaintiff has failed to present evidence to establish a RLUIPA claim, the Court next considered Plaintiff's similar First Amendment claims.

 ii. <u>Free Exercise Claims</u>

Free Exercise claims, like those under RLUIPA, proceed in two stages. <u>Wright</u>, 921 F.3d at 418. The first stage is "essentially the same" as a claim under RLUPIA: "the plaintiff must show that the prison's policies imposed a substantial burden on his exercise of sincerely held religious beliefs." <u>Id.</u> However, at the second stage, "the plaintiff has the burden to show that the policies at issue are not 'reasonably related to legitimate penological interests.'" <u>Id.</u> at 418 (quoting <u>Turner v. Safley</u>, 482 U.S. 78, 89 (1997)). A prison regulation is reasonable and thus permissible under the First Amendment if it satisfies the four factors established in <u>Turner v. Safley</u>, 482 U.S. 78 (1987). <u>See</u> <u>Wall v. Wade</u>, 741 F.3d 492, 499 (4th Cir. 2014). That test asks

> (1) whether there is a "valid, rational connection" between the prison regulation or action and the interest asserted by the government, or whether this interest is "so remote as to render the policy arbitrary or irrational"; (2) whether "alternative means of exercising the right . . . remain open to prison inmates"; (3) what impact the desired accommodation would have on security staff, inmates, and the allocation of prison resources; and (4) whether there exist any "obvious, easy alternatives" to the challenged regulation or action.

<u>Wall</u>, 741 F.3d at 499; <u>Turner</u>, 482 U.S. at 89–92. The First Amendment thus "affords less protection to inmates' free exercise rights than does RLUIPA." <u>Lovelace</u>, 472 F.3d at 199-200. And where "'an inmate has not put forth sufficient evidence under RLUIPA to demonstrate a substantial burden on his religious exercise, his claims fail under the Free Exercise Clause of the First Amendment as well.'" <u>Sirleaf v. Pearson</u>, No. 3:15CV301, 2017

WL 655173, at *5 (E.D. Va. Feb. 16, 2017) (quoting <u>Van Wyhe v. Reisch</u>, 581 F.3d 639, 657-58 (8th Cir. 2009)).

In this case, as explained above, Plaintiff has not put forth sufficient evidence to demonstrate that the lack of a Zakat fund and Scotland's celebration of the Eid Feast in 2019 substantially burdened Plaintiff's exercise of his religious beliefs. Failing to make this showing not only forecloses Plaintiff's RLUIPA claim, but also forecloses Plaintiff's First Amendment claims. Thus, as with Plaintiff's RLUIPA claims, Plaintiff cannot show that Defendants' actions violated his free exercise rights, and the Court recommends that these claims be dismissed.

Plaintiff has not shown that Defendants substantially burdened Plaintiff's exercise of his religious beliefs under RLUIPA or the First Amendment either by failing to maintain a Zakat fund at Scotland, or with respect to the type of Eid Feast offered at Scotland in 2019. Plaintiff's claims against all Defendants under RLUIPA and the First Amendment should therefore be dismissed. [10]

---

[10] Defendants also argue that "[t]o the extent plaintiff seeks to raise § 1983 claims dating back to 2014, they are barred by the applicable statute of limitations." (Defs.' Br. at 7.) Defendants are correct that North Carolina's three-year statute of limitations governs Plaintiff's constitutional claims arising under § 1983. <u>See Wilson v. Garcia</u>, 471 U.S. 261, 276-80 (1985) (holding that, in § 1983 actions, state statute of limitations for personal injury applies); <u>Brooks v. City of Winston-Salem</u>, 85 F.3d 178, 181 (4th Cir. 1996) (applying North Carolina's three-year statute of limitations for personal injuries to § 1983 actions); N.C. Gen. Stat. § 1-52(5) (establishing three-year statute of limitations for personal injury). However, Plaintiff's claims arising under RLUIPA are not governed by North Carolina's personal injury statute of limitations and instead have a four-year statute of limitations. <u>See Al-Amin v. Shear</u>, 325 F. App'x 190, 193 (4th Cir. 2009); 28 U.S.C. § 1658 (providing a four-year limitation period for civil actions arising under an Act of Congress after December 1, 1990); <u>see Wendt v. Bullard</u>, No. 5:23CT3047, 2024 WL 3955458, at *8 (E.D.N.C. Aug. 27, 2024) (noting the three-year statute of limitations for § 1983 claims and four-year statute of limitations for RLUIPA actions). Therefore, to the extent that Plaintiff's § 1983 claims arise from events prior to May 17, 2018, three years before Plaintiff filed his Complaint, these claims are time barred. Similarly, with respect to Plaintiff's RLUIPA claims, to the extent that these claims are based on events that occurred before May 17, 2017, four years before Plaintiff filed his Complaint, these claims are time barred.

C. Fourteenth Amendment Equal Protection Claim

Plaintiff alleges that his equal protection rights were violated because Kairos, a Christian organization, offered a weekend retreat for inmates at Scotland to "attend and spend the whole day" while Muslim inmates were not offered a similar weekend retreat. (Compl. at 9.) The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Equal Protection Clause is "essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985) (citation omitted). To prevail on an equal protection claim, a plaintiff must demonstrate (1) "that he has been treated differently from others with whom he is similarly situated" and (2) "that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). "Two groups of persons are 'similarly situated' only if they are 'similar in all aspects relevant to attaining the legitimate objectives' of the policy or legislation." Ofori v. Fleming, No. 7:20CV344, 2022 WL 3584904, at *8 (W.D. Va. Aug. 22, 2022) (quoting Van Der Linde Housing, Inc. v. Rivanna Solid Waste Auth., 507 F.3d 290, 293 (4th Cir. 2007)). To establish intentional or purposeful

---

Defendants do not specify which claims they believe should be barred by the applicable statute of limitations. It appears that Plaintiff's only claim where Defendants' conduct may predate either of these dates is the allegation that Defendant Poole terminated Scotland's Zakat fund in 2014 when she became Warden. (Compl. at 9.) Defendant Poole acknowledges that while she was Warden, "Scotland CI did not implement the Zakat fund due to lack of participation." (Poole Decl. ¶ 3.) However, as the Court understands the thrust of Plaintiff's allegations with respect to Scotland's Zakat fund, Plaintiff does not allege that Defendant Poole substantially burdened Plaintiff's religious exercise when she terminated the fund in 2014, but rather that the exercise of his religious beliefs was substantially burdened in 2019 when he sought to use the Zakat fund to purchase items for the Eid Feast and was subsequently informed that the Zakat fund was not operational. Because Plaintiff's allegations stem from actions in 2019, not 2014, Plaintiff's § 1983 and RLUIPA claims are not time barred. In any event, as discussed above, Plaintiff has not produced sufficient evidence to establish a free exercise violation or a violation of RLUIPA, so the Court ultimately need not address the statute of limitations issue.

discrimination, "a plaintiff must set forth 'specific, non-conclusory factual evidence that establishes improper motive.'" Sirleaf, 2017 WL 655173, at *5 (internal brackets omitted) (quoting Trulock v. Freeh, 275 F.3d 391, 405 (4th Cir. 2001)).

If a plaintiff makes this showing, the court then "proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." Morrison, 239 F.3d at 654. "[W]hile a prisoner does not forfeit his constitutional right to equal protection by the fact that he has been convicted of a crime and imprisoned, prisoner claims under the equal protection clause" are subject to a "lesser standard of scrutiny" given the "special security and management concerns in the prison system." Id. at 654-55. Thus, "'[a] prison regulation [that] impinges on inmates' constitutional rights … is valid if it is reasonably related to legitimate penological interests.'" Id. at 654-55 (quoting Turner, 482 U.S. at 89).

In this case, with respect to the first element, Plaintiff cannot show that he was similarly situated with respect to Kairos's weekend retreats. Plaintiff has not produced any evidence to show that a Muslim community group was interested in leading a weekend retreat at Scotland similar to the retreat offered by Kairos. To the contrary, Defendants have sworn that no Muslim groups in the area offered to provide a similar retreat or were denied the opportunity to host a similar fellowship at Scotland. (Poole Decl. ¶ 3; Bowens Decl. ¶ 3.) Absent evidence of a Muslim organization interested in catering food or hosting weekend retreats, Plaintiff cannot show that Muslim groups were treated differently than Christian groups, or that he was similarly-situated to the Christian inmates who attended Kairos's retreat.[11] See Ofori, 2022

---

[11] The Court notes that Plaintiff, like all inmates at Scotland regardless of faith, was permitted to attend Kairos's retreat. (Poole Decl. ¶ 3; Compl. at 44.) In fact, in papers attached to his Complaint, Plaintiff produced

WL 3584904, at *10 (finding plaintiff was not similarly situated to inmates of other faiths where he provided "no information about whether the groups have the same or similar number of inmates, have the same availability of qualified religious representatives or volunteers to lead services, or meet in the same facilities").

With respect to the second element, Plaintiff has also failed to plausibly allege that any difference in treatment was the result of "intentional or purposeful discrimination." See Morrison, 239 F.3d at 654. No evidence suggests that Defendants intended to discriminate against Plaintiff by refusing to permit a Muslim organization to organize a weekend retreat; instead it appears that no local Muslim organization was interested in doing so.

In sum, Plaintiff has not established that Defendants Poole, Locklear, McLucas-Floyd, and Bowens violated Plaintiff's equal protection rights under the Fourteenth Amendment, and the Court recommends that these claims be dismissed.

D. Qualified Immunity

Defendants allege that they are protected by qualified immunity from Plaintiff's individual capacity claims. (Defs.' Br. at 8-10.) Qualified immunity shields government officials from civil liability unless "the official violated a statutory or constitutional right" and "the right was 'clearly established' at the time of the challenged conduct." Ashcroft v. Al-Kidd, 563 U.S. 731, 735 (2011) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). A right is clearly established when "'the contours of a right are sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'"

---

evidence that of the 16 participants and alternates enrolled to participate in Kairos's retreat in November 2019, only half identified as Christian. (Compl. at 44.)

<u>Ashcroft</u>, 563 U.S. at 741 (quotations omitted). Thus, "[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." <u>Id.</u> at 743.

First, as explained above, Plaintiff has not produced evidence of a substantial burden on the exercise of his religious beliefs and therefore failed to establish a violation of RLUIPA or the First Amendment. In addition, Plaintiff did not put forth evidence to show that he was treated differently from similarly-situated inmates at Scotland as a result of intentional or purposeful discrimination and therefore failed to establish a violation of the Fourteenth Amendment.

Second, the Court finds no basis to conclude that it was clearly established that failing to maintain a Zakat trust fund, providing fruit and punch to celebrate the Eid Feast, or permitting Christian organizations to organize weekend retreats (without precluding similar efforts by groups of other faiths) constituted a violation of Plaintiff's constitutional or statutory rights. <u>See</u> <u>Carawan</u>, 2018 WL 1187560, at *5 ("The Court finds no authority showing that, at the time the Zakat fund was discontinued at [the prison], it was clearly established under the First Amendment that the lack of a Zakat fund at a North Carolina prison constitutes a violation of a prisoner's constitutional or other federal rights.").

Thus, for the reasons set out at length above, the Court recommends dismissal of Plaintiff's individual capacity claims against Defendants Brown, Poole, Locklear, McLucas-Floyd, and Bowens because Plaintiff did not establish a violation of his rights under the constitution or RLUIPA, and the Court further concludes that Defendants are additionally entitled to qualified immunity.

IV.    CONCLUSION

For the foregoing reasons, Plaintiff has failed to present sufficient evidence to support a claim that Defendants violated his rights under RLUIPA or the First or Fourteenth Amendments, and Defendants are therefore entitled to summary judgment.

IT IS THEREFORE RECOMMENDED that Defendants' Motion for Summary Judgment [Doc. #35] be GRANTED and Plaintiff's Motion for Summary Judgment [Doc. #38] be DENIED, and this action be dismissed with prejudice.

This, the 31st day of January, 2025.

Joi Elizabeth Peake<br/>
United States Magistrate Judge